The first case on the calendar this morning is No. 20-569, Deutsch v. Sherwin-Williams Company. I believe we're hearing from Mr. Kornstein first. Thank you, Your Honor. Let me just say that our general plan is to allow each advocate to have roughly two minutes of uninterrupted time, and then we'll begin questioning just as questions occur to us. We'll then just proceed on, and I will note when around one minute is remaining, just since there's no light to go on in front of you and tell you that your time is drawing to a close. I hope that will work for you all. Mr. Kornstein, please go ahead. May it please the Court. The main issue on this appeal is interpretation of an advertising agency contract. The district court dismissed the complaint for failure to state a claim. We think the court misinterpreted the key clause. The clause at issue is paragraph 3C, especially the last sentence, and that's found at page 15 of the appendix. As you can see, it talks about a monthly fee to be continued until different compensation terms are agreed. That's the disputed clause here. The district court on the other side says that that only applies when a statement of work has expired. We say the contrary. That applies whether or not a statement of work has expired. And we think it's clear on the face of it because if you look at that particular clause, it would be redundant and, in a certain sense, be surplusage and make no sense if it only applied, as they say, when the statement of work is expired. Yes. There has to be a statement of work. They're saying there has to be a statement of work either in place or under negotiation. Correct. And we say that that's not on the face of language and in fact it makes no sense because it's like saying the contract is in force or the statement of payment is in force and here it is. It's in force again until it's not in force. You don't need that. It has purchase. It has meaning when the statement of work is not in force and when it's expired. It continues over. So that's the textual. But, Mr. Cornstead, I don't understand. The contract says that it will pay, that Sherwin-Williams will pay the agency a fee specified on the statement of work. I don't see any other place in the general contract as opposed to the statement of work that imposes an obligation to pay a monthly fee. It's only in connection with the statement of work. And the rate could be negotiated differently in different years over time. But I don't see an obligation either to have a statement of work, to enter into one, or to pay a fee that's apart from the monthly fee that's specified in the statement of work. What am I missing? The statement of work applies to particular services. The contract is broader than the statement of work because it has obligations in terms of the non-compete clause, being available for work, maintaining insurance. And, in fact, Section 2A of the contract, which contains the termination clause, provides for the payment of the monthly fee for three months after notice of termination is given. But, Mr. Kornstein, I'm not seeing any place where it obligates Sherwin-Williams to pay anything if a statement of work is not in effect. I mean, one could have drafted the contract so there would be like a retainer and a monthly payment would be due just to, because of the exclusivity, another obligation. And then you'd have separately negotiated fees related to work done that is specified in a particular statement of work. But I don't see any obligation to pay any kind of fee, notwithstanding those other obligations, if a statement of work isn't in effect. Is there one? We think there is, by reading both 2A, the termination clause, together with 3C, and understanding how these advertising agency contracts work, that there would be this obligation and that it is explicit. That's the nature of the relationship, that it is a retainer arrangement that keeps the agency on call and they've had to ramp up in order to service this particular business. Mr. Kornstein, is it your position that, in effect, where 2A uses the term monthly fee, it borrows that definition from 3C? And the monthly fee is determined by whatever the most recent statement of work is. But that the monthly fee is specified in 2A, it says that all rights and responsibilities of the party shall continue during the notice period, which is the three-month term. Yes, Your Worship. And so all rights and responsibilities of the party shall continue during that period. And there's nothing that links the monthly fee in that provision to the statement of work as such. I mean, it borrows the term, but it continues. And so there are really two obligations. There's an obligation created with respect to the statement of work of 60 days notice. And then there's an obligation with regard to this agreement that we're looking at of 90 days notice. And really, you're saying they can be harmonized. That's right, Your Honor. That's our position. And we think that the pre-litigation conduct of the parties supports that, that if you look at the statements of work, number four and number five, they are dated in the middle of the term of the statement of work. So that when the prior statement of work expired, the relationship continued, payments were continuing to be made, and it was even after a statement of work expired. Would you agree that under Ohio law, we are not allowed to look at extrinsic evidence if we find the terms unambiguous? That's a general proposition, but I think there are exceptions to it, both in Ohio law and generally in the common law, where it throws good light on what the parties meant. Here, if it's unambiguous, we think it's unambiguous our way. But if it is ambiguous, then we think that there may be two plausible readings. Certainly, the district court thought there was another side to it. And if it's ambiguous, then the court should vacate and send back for further proceedings. But we think that it's not extrinsic evidence because it's on the face of the statements of work, and it would be a reasonable inference from those statements of work and the dates of those statements of work that the payments continued. Plus, we have the industry custom, which the amicus brief lays out, that this is standard procedure within the advertising industry, that in order to allow the relationship between an advertising agency and its customer, and because of the ramping up that's required and these additional obligations, that the continuation of the fee until termination, or until the three-month period, is appropriate and common. If there has been a delay in executing an initial statement of work, what would the monthly fee have been? The fee that was in existence before, on the last expired statement of work. No, no, I'm saying in statement of work number one, there's nothing in the contract that I've seen that suggests a statement of work had to be entered into as soon as the contract was executed, the overarching structural contract, the master agreement, if you will. What fee would have been in place? If there had been no statement of work, then there would be no fee. There's no initial measuring rod. So even though the eligibility and other obligations would have been in effect, there would be no monthly obligation of payment, right? Right, until there is a monthly fee. There has to be a monthly fee before that obligation kicks in, right? Correct. I should ask this of the other side, but if the monthly fee has to be paid only when the statement of work is in effect, then what do you do with the extra 30 days notice required for contract termination? It would seem to be meaningless. Right. We agree with that. Absolutely. I thought you would. This is Judge Park. I have a question about the work that was actually ordered in the statement of work. Is there any dispute that it was completed by the end of 2017? No. No dispute about that. Okay. I'm sorry. No, if that's right, then what would the ongoing monthly payments of the same amount that's defined by the statement of work have been for? Well, it's... Let me just interrupt for a second. Please answer Judge Park's question, but I just wanted to give you a warning. You have just one minute left. Part of it is the retainer concept that because the non-compete is in effect, because insurance must be maintained, because the employees must be held ready, willing, and able to do work during those three months, that's what the payment is based on. And, you know, the other aspect that it really is a constructive termination, whether or not they gave formal notice of termination. So the amount is keyed to work that's completed, but there's some kind of implied retainer arrangement. That's the way you're asking us to read this. Yep. And we think that the court should vacate the pre-answer dismissal, send it back, and let the case proceed. Thank you. Thank you very much. I think we have your argument. Mr. Secco, please. Thank you, Your Honor. May it please the court. My name is Nicholas Secco. I represent Sherwin-Williams. The only dispositive issue before this court is the construction of the facial language of the agency services agreement as a matter of law. The district court held that under the unmistakable payment terms of the agency services agreement, Sherwin-Williams is not required to make any payments outside the term of a statement of work. The fundamental rationale for that holding can be distilled down to one compelling principle. The parties could not, would not, and did not establish a perpetual payment obligation outside of a statement of work by invoking the very defined term, monthly fee, that depends upon the existence of a statement of work. Put another way, the only way that Deutsch can prevail in this proceeding is by convincing this tribunal that there's a reasonable reading of this contract that converts an explicit statement of work payment term into a non-statement of work payment term. There is no such reasonable reading in light of the definition of monthly fee and some of the parallel contract provisions. What is the purpose of the 90-day notice under these circumstances? How is that effectuated? Because the 90-day notice for the contract, which was never given, the other side is saying was effectuated or was initiated by constructive termination. But how do you reconcile that? If a notice had been given a week before the end of the final statement of work, then what would be the consequences of that? You never gave a notice. And they're saying, wait a minute, we have to be ready for yet another negotiation of a statement of work under the agreement because it's a 90-day notice period. They're not asking for perpetual. They're asking for three months because that's what the contract said you needed to give notice on. Ideally, in a perfect world, you would have given notice 90 days before the end of the last statement of work. But you didn't do that. So how is this contract terminated just by the end of a statement of work? That's what I don't understand, how to reconcile that with paragraph 2C. Your Honor, it is not our position that the agency services agreement was terminated by the end of a statement of work. In fact, our position is the opposite. The agency services agreement states that statements of work shall be entered into from time to time as may be agreed by the parties. Hence, the agency services agreement specifically contemplates that there will, in fact, be periods where the umbrella agreement is in effect, but there is no corresponding statement of work. Because the agency services agreement specifically contemplates periods where the framework is in place, but there's no statement of work, the mere end of a statement of work cannot terminate the agreement as a matter of law. That's the point I wanted to make, and I wanted to understand. Because, therefore, since the statement of work, the last statement of work ended, after the last statement of work ended, there was an opportunity, a period in which there could have been a renegotiation, as has been true previously, in two previous years. So during that 90-day period, there could be a renegotiation, which I think is what the other side is saying is the reason why they have to keep their employees ready, why they have to keep their insurance in place, and why their non-compete provision is still effective. So under those circumstances, it seems to me, and what you just said, is that during that 90-day period, there could have been a negotiation for another statement of work. Is that correct? Your Honor, we agree that once the statement of work 5 ended, there could have been a negotiation for a subsequent statement of work. The critical issue here is what were Sherwin-Williams' payment obligations during a period of time where there was no statement of work in place? Well, let me ask you, isn't it true that in the two prior situations, I forget the exact years, 2016 and 17, I think, there was a gap between the renegotiation and the end of the prior statement of work, and there was compensation paid during that gap? Right? Let me be very, sorry, Your Honor, I didn't mean to interrupt. No, no, just go ahead. I'll be a little more clear with the question. The year for 1917, sorry, 2017, was agreed upon, the statement of work for that year was agreed upon on April 17. But the prior statement of work had ended at the end of 2016, and so that whole year then was agreed upon. It was retroactive to January, and there was compensation during the period of time when there was no statement of work in place. Is that correct? Let me be very clear, Your Honor. Your account of the facial terms of the statement of work is correct. The statements of work were, in fact, executed mid-year and were retroactive to the beginning of the year, but, and this is an important caveat, there is absolutely... Go ahead. Go ahead. I'm sorry. There is absolutely no evidence in the appellate record or in the underlying trial record about the types of payments that were being made between the expiration of the previous statement of work and the execution of the subsequent statement of work. Deutch comes forward with these absolutely unequivocal categorical statements about the course of performance between the two parties, and not one of those unequivocal assertions contains a citation to anything in the trial court record or the appellate court record. There is a reason for that. This is a disputed question of fact at the trial court level, and it shouldn't have been injected here. It's also, in my view, irrelevant to the construction of the facial language. Well, the only reason that I'm raising it is because you said that the payments are not tied to the actual existence of a statement of work, and I'm saying yes, and that seemed to be, at least that's what the other side argued, happened in 2016 and in 2017. And now you're saying, well, that's not in the record. But if it's true what they say, then at the very least, don't we have an ambiguity here that needs to be dealt with by extrinsic evidence? I would say no, Your Honor, even if you assume arguendo that their factual narrative is true, and we don't. But even if you assume arguendo that their factual narrative is true, that is extrinsic evidence, and under Ohio law, extrinsic evidence cannot be used to create an ambiguity. An ambiguity must be found within the four corners of the language of the contract, and here monthly fee is clearly defined as something which only can arise during the pendency of a statement of work. Well, you're saying it arises during the pendency of a statement of work. Okay. But then you're saying that the contract continues after the end of a statement of work. The agency agreement itself, you said earlier, continues after the statement of work. And there's a 60-day notice requirement for the end of a statement of work, but there's a 90-day notice requirement for the agency agreement. And if that can continue after the end of a statement of work for up to 90 days, then it seems to me that I don't understand your position. Because as long as the contract is in agreement, there's an obligation to pay a monthly fee, isn't there? You're saying the monthly fee exists independently of the statement of work. It's created by the statement of work. That is, we know what the fee is because of the statement of work. But we also know that there's a notice requirement, and under the provision in question, the contract continues for 90 days after the notice is given. And here, it's constructed notice by virtue of the fact that you walked away. Mr. Secco, let me just say, please answer Judge Walker's comment, but there's just one minute left. Thank you, Your Honor. Your Honor, our view is that the agency services agreement continues indefinitely until one of the parties gives notice of termination. And the question here is, what are the payment obligations during the 90-day termination period once notice is given? If you look at the definitions in the contract, I think the answer is fairly clear. If there's a statement of work in place during that 90-day termination period, then you must pay the monthly fee under that statement of work. If there's no statement of work in place during that 90-day termination period, then there's no corresponding payment obligation for Sherwin-Williams because Sherwin-Williams only must pay when there's a statement of work in place. As for constructive termination, their argument is that we constructively terminated by getting another agency, but there's nothing in the agency services agreement that prevents that. They argue that we constructively terminated by not negotiating another statement of work, but that's specifically contemplated by the agency services agreement. So there was no constructive termination. The only question is, does Sherwin-Williams have an obligation to pay a monthly fee when there's no statement of work? Monthly fee is nothing more than an installment of a fee under a statement of work. What was it that caused the agreement to terminate? The agency services agreement, not the statement of work. What caused that to terminate? Your Honor, our position is that it was never terminated, and in fact, we asked Deutsche's witnesses at deposition in the underlying suit whether the contract had been terminated, and they answered the negative as well. Okay, so if it was never terminated, then what they're doing is they're only asking for three months. They're not asking for perpetual payments. In effect, they're saying it was a constructive termination because you never gave notice, but I don't know how that's their fault. If you were the one who had a notice obligation, you never gave it. Your Honor, there's nothing in the contract that required us to terminate at any point in time. The termination provision is entirely voluntary. Did they perform any services in the period after the statement of work ended? Your Honor, there may have been some wind-down services that they performed during that period of time that they were separately compensated for. Okay, let me just finish up with one question if I may. And that is that even though they didn't perform direct services other than possible wind-down, they did not leave the field. They're taking the position anyway that they were ready, willing, and available to renegotiate as they had in the past, but you didn't want to do that. So they feel that they need to be compensated for the fact that they kept their employees in place, kept their non-compete in place, and continued their insurance, which they apparently had to do for three months afterwards. Yes, Your Honor. Thank you. All right, thank you very much. I think we have the arguments. We'll take the matter under advisement. Sorry, is there no rebuttal? There's no rebuttal. No, Mr. Kornstein declined rebuttal time. Okay.